In re:   MUNDY RANCH, INC.,                                                          No. 12-13015-j11

Debtor.

MEMORANDUM OPINION

THIS MATTER is before the Court on the Debtor's Motion to Approve Sale of Real Property Free and Clear of Liens to Ray and Colleen Milligan Pursuant to 11 U.S.C. §§ 363 (the "Motion") (Docket No. 31), filed by and through its attorneys of record, Law Office of George "Dave" Giddens, P.C. (Christopher Gatton). Debtor Mundy Ranch, Inc. ("Mundy Ranch") filed a supporting brief (Docket No. 42). Father Robert Mundy ("Father Mundy") filed an objection (Docket No. 36) and a brief (Docket No. 43). The Court held a final evidentiary hearing on the Motion on November 27, 2012 and took the matter under advisement.

Mundy Ranch seeks approval of the sale of 32.25 acres of vacant real property free and clear of any claims, liens, or other interests pursuant to 11 U.S.C. § 363(f). Father Mundy contends that the property cannot be sold free and clear of his claim to the property because it is not an interest subject to 11 U.S.C. § 363(f). Alternatively, Father Mundy asserts that if he does have an interest in the property within the meaning of 11 U.S.C. § 363(f), the Court should sequester all or a portion of the sale proceeds pending plan confirmation. After consideration of the Motion in light of the applicable sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et al. ("Bankruptcy Code") and relevant case law, and being otherwise sufficiently informed, the Court concludes that Mundy Ranch will be permitted to sell the property in question free and clear of any interests, including the interest of Father Mundy. Father Mundy's interest is already adequately protected by the restrictions on Mundy Ranch's operations as a Chapter 11 debtor in

possession and other protections the Bankruptcy Code affords Father Mundy. The Court will not require that any sale proceeds be sequestered. The Court will, therefore, grant the Motion.

FINDINGS OF FACT

Mundy Ranch is a family-owned corporation organized under the laws of the State of New Mexico with its principal place of business in Rio Arriba County, New Mexico. Mundy Ranch sells undeveloped parcels of real property in northern New Mexico which together occupy approximately 6,000 acres of land. The majority of the land consists of an undivided 5,500 acre parcel, which is also called Mundy Ranch (the "Mundy Ranch Parcel"). Mundy Ranch scheduled the Mundy Ranch Parcel as having a value of $17,000,000, with secured claims against the Mundy Ranch Parcel in the amount of $2,095,000. *See* Mundy Ranch's Exhibit G. Mundy Ranch generates substantially all of its revenue from developing and selling parcels of land. It generates a small amount of revenue by selling Christmas trees. Father Mundy is a shareholder of Mundy Ranch who owns, either directly or indirectly, approximately 25% of the outstanding stock of the corporation. His father, James Mundy, is the controlling shareholder of Mundy Ranch, owning, either directly or indirectly, approximately 40% of the outstanding Mundy Ranch stock.[1]

At some point Father Mundy became dissatisfied with the way James Mundy was managing Mundy Ranch. On March 9, 2012, Father Mundy filed a complaint in the First Judicial District Court of New Mexico (the "State Court"), styled *Robert L. Mundy v. James W. Mundy, Mundy Ranch Incorporated, Mundy Family Revocable Trust, Mundy Ranch Limited Partnership, and J & S Mundy Family Limited Partnership*, Case No. D-117-CV-2012-00098

---

[1] Other shareholders include: (1) Father Mundy's brother, Mark Mundy, who owns, either directly or indirectly, approximately 25% of the outstanding Mundy Ranch stock; and (2) Mark Mundy's children, Tyler Mundy and Annalee Mundy, who together own, either directly or indirectly, approximately 10% of the outstanding Mundy Ranch stock.

(the "State Action"), seeking dissolution of Mundy Ranch and a partition of all its property (the "Partition Claim"). *See* Father Mundy's Exhibit 1. Father Mundy alleges that he is entitled to dissolution and partition because, among other things, James Mundy, who controls Mundy Ranch, has dissipated, misapplied and/or wasted its assets. Exhibit 1, State Court Complaint, ¶ 41. The claim for dissolution and the Partition Claim are in bona fide dispute. On March 15, 2012, Father Mundy filed a notice of lis pendens (the "Lis Pendens") in the Office of the County Clerk of Rio Arriba County to notify any prospective purchasers or encumbrancers of the existence of the Partition Claim. *See* Father Mundy's Exhibit B.

On August 10, 2012, Mundy Ranch filed a voluntary petition under Chapter 11 of the Bankruptcy Code. As part of its reorganization efforts, Mundy Ranch is attempting to sell all or a substantial portion of its land. To this end, Mundy Ranch negotiated a purchase agreement with Ray Milligan and Colleen Milligan (together, the "Buyers") to sell 32.25 acres (or roughly 20%) of a vacant parcel of land known as the Simms Property (the portions of the Simms Property under contract with the Buyers is referred to below as the "Simms Parcel"). *See* Mundy Ranch's Exhibit E. The purchase agreement provides that the Buyers will pay Mundy Ranch a total sum of $145,125.00, payable as follows: (1) $36,281.25 as a cash down payment; and (2) three annual payments of $36,281.25. *See* Mundy Ranch's Exhibit D. Mundy Ranch intends to use the net sale proceeds to pay its operating expenses, which range from $35,000 to $40,000 per month. David Mettler, Mundy Ranch's vice president, testified that these expenses include, among other things: (1) employees' salaries; (2) maintenance fees; (3) legal fees; (4) utilities; and (4) insurance.

The Buyers, who live in northern New Mexico, own land that shares a common boundary with the Simms Parcel. The Buyers are not insiders of Mundy Ranch. The purchase agreement

was negotiated at arm's length. In addition, the $145,125.00 purchase price represents fair market value for the Simms Parcel. The Buyers are purchasing the Simms Parcel in good faith. Finally, the sale of the Simms Parcel will not negatively affect the value of Mundy Ranch's remaining property.

## DISCUSSION

*1. Objections to Sale of the Simms Parcel*

Father Mundy objects to the sale of the Simms Parcel on the grounds that: (1) the proposed purchase price is not reasonable; (2) the sale of the Simms Parcel could jeopardize a potential sale of the entire Mundy Ranch property; and (3) Mundy Ranch has not adequately disclosed what portion of the sale proceeds it intends to retain. Father Mundy also objects to Mundy Ranch using the sale proceeds to pay its operating expenses. The Court finds that the purchase price for the Simms Parcel represents fair market value and that the sale of the Simms Parcel will not adversely affect the value of Mundy Ranch's remaining property. Mundy Ranch has adequately disclosed that it intends to use the net sale proceeds to fund ongoing operations. The Court, therefore, concludes that these objections to the proposed sale of the Simms Parcel are without merit. The Court will approve the sale.

*2.      Objections to Relief Under 11 U.S.C. § 363(f)*

Father Mundy also objects to the Court granting any relief under 11 U.S.C. § 363(f) if the sale is approved. He contends that he does not have an interest in the Simms Parcel within the meaning of 11 U.S.C. § 363(f) and, therefore, Mundy Ranch cannot sell it free and clear of the Partition Claim or the Lis Pendens. Alternatively, Father Mundy asserts that he has an interest in all of the Mundy Ranch property, including the Simms Parcel, as result of his assertion of the Partition Claim and that he is entitled to adequate protection under 11 U.S.C. §§ 361 and 363 if

the Court approves a sale free and clear of his interest. *See* Memorandum Regarding Lis Pendens (Docket No. 43). More specifically, Father Mundy asks that all or his portion of the sale proceeds be sequestered until the Partition Claim is resolved.[2] *Id.* Father Mundy seeks to protect his interest against dissipation of the sale proceeds because, according to his objection, Mundy Ranch does not generate sufficient revenue to cover its expenses, and Mundy Ranch should not be allowed to "cannibalize" its assets and continue to dissipate proceeds. *See* Objection to Motion to Sell, ¶ 6 (Docket No. 36).

    a. *Whether the Partition Claim is an Interest in the Simms Parcel Within the Meaning of 11 U.S.C. § 363(f)*

Mundy Ranch seeks a sale of the Simms Parcel free and clear of any interests, including Father Mundy's Partition Claim and the Lis Pendens. Section 363(f) permits a trustee or debtor in possession[3] to sell property belonging to the bankruptcy estate free and clear of interests in the property if the requirements of that section are met. That section provides:

> The trustee may sell property … free and clear of any interest in such property of an entity other than the estate, only if--
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

---

[2] Father Mundy initially contended that all the net sale proceeds should be sequestered until the Court approved Mundy Ranch's plan of reorganization. *See* Father Mundy's Objection, p. 2. However, at the final hearing Father Mundy stated that the amount to which he is potentially entitled is 25% of the total sale price ($145,125.00), which is approximately $36,281.25, and that he would be satisfied with sequestration of that amount.

[3] Section 1107 grants a debtor in possession the rights and powers of a trustee, with limitations not applicable here, including the right and power to sell property under Section 363. *See* 11 U.S.C. § 1107.

The initial task before the Court is to determine the meaning of the phrase "any interest in such property" as used in 11 U.S.C. § 363(f). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Oklahoma Dept. of Securities, ex. rel. Faught v. Wilcox,* 691 F.3d 1171, 1181 (10th Cir. 2012) (*quoting Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (internal quotations omitted)). Statutory terms must be construed according to their ordinary, common meaning unless they are specifically defined by the statute or the statutory context requires a different definition. *Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 207, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997).

"Interest," as used in Section 363(f), is not defined by the Bankruptcy Code. Courts have not settled upon a precise definition of the term. Some courts narrowly construe "interest in property" to mean an *in rem* interest such as a lien. *See, e.g., In re White Motor Credit Corp.,* 75 B.R. 944, 948 (Bankr.N.D.Ohio 1987) ("General unsecured claimants including tort claimants, have no specific interest in a debtor's property. Therefore, Section 363 is inapplicable for sales free and clear of such claims.").[4] Courts adopting the narrow construction reason that an expansive view of the term "interest" blurs the distinction between secured and unsecured creditors' interests in the estate. For example, the Court in *In re Fairchild Aircraft Corp.* pointed out that "[e]ven though all creditors have an interest in the estate, they do not have the interest in property that would be cognizable under [other sections of the Bankruptcy Code]." 184 B.R. at 918.

---

[4]*See also In re New England Fish Co.,* 19 B.R. 323, 326 (Bankr.W.D.Wash.1982) (same); *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 917-19 (Bankr.W.D.Tex.1995), *vacated on other grounds*, 220 B.R. 909 (Bankr.W.D.Tex.1998) (same).

6

The Tenth Circuit has not defined "interest in property" for the purposes of applying 11 U.S.C. § 363(f). However, "the trend seems to be toward a more expansive reading of interest in property as encompassing other obligations that may flow from ownership of the property." *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 405 (10th Cir. BAP 2007) (citing 3 Collier on Bankruptcy ¶ 363.06[1]). At least three circuits have construed "interest in property" under Section 363(f) expansively to include affirmative claims if there is a sufficient relationship between the claim and the asset to be sold. *See In re Chrysler LLC,* 576 F.3d 108, 126 (2nd Cir. 2009); *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3rd Cir 2003); *United Mine Workers of Am.1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 581 (4th Cir.1996).[5]

In *Trans World Airlines, Inc.* ("TWA"), the Third Circuit held that employment discrimination claims and travel voucher claims arising from the settlement of employment discrimination claims constituted "interests" under Section 363(f) in connection with the sale of substantially all of TWA's assets. 322 F.3d at 289-90. The Court reasoned that "it was the assets of the debtor which gave rise to the claims" because "[h]ad TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability claims would not have arisen" and "TWA's investment in commercial aviation is inextricably linked to its employment of the … claimants…." *Id. at 290.* In *Chrysler*, the Second Circuit, following the Third Circuit's opinion in *TWA*, held that products liability claims constituted interests in

---

[5] *See also Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir.2003) ("interest" as used in Section 363(f) included lessee's possessory interest in the property); *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 41 (9th Cir. BAP 2008) (adopting an expansive view of "interest" under Section 363(f)); *P.K.R. Convalescent Centers., Inc. v. Virginia*, 189 B.R. 90, 94 (Bankr.E.D.Va.1995) (the statutory right to recapture depreciation on sale of health facility is an interest within meaning of Section 363(f)(5)).

7

Chrysler's assets within the meaning of Section 363(f) because the claims arose from the property to be sold. 576 F.3d at 124-25.

In *Leckie*, the debtor wished to sell its coal mining assets free of a benefit fund's and benefit plan's rights to collect future premium payments under the Coal Act. The Fourth Circuit held that rights to collect future premium payments constituted an interest in the coal mining assets because "[t]hose rights are grounded, at least in part, in the fact that those very assets have been employed for coal-mining purposes…." 99 F.3d at 582. The Fourth Circuit concluded that "[b]ecause there is … a relationship between (1) the Fund's and Plan's rights to demand premium payments from Appellees [the debtor] and (2) the use to which Appellees put their assets, … the Fund and Plan have interests in those assets within the meaning of section 363(f)." *Id*.

A construction of "any interest in such property" under Section 363(f) that does not limit "interest in property" to *in rem* interests such as a lien is consistent with the language of the statute. Section 363(f) broadly refers to "*any* interest." (emphasis added). Subsection (3), unlike Subsections (1), (4) and (5), applies only if "such interest is a lien;" therefore, the term "interest" as used in Section 363(f) necessarily contemplates something broader than the term "lien". *See In re Trans World Airlines, Inc.* 322 F.3d at 290 (noting that "to equate interests in property with only in rem interests such as liens would be incompatible with section 363(f)(3), which contemplates that a lien is but one type of interest"); *In re WBQ P'ship*, 189 B.R. 97, 105 (E.D.Va.1995) (noting that "since 'lien' is a defined term under the Bankruptcy Code, it stands to reason that Congress would have used the term 'lien' instead of 'interest,' had it intended to restrict the scope of Section 363(f) to liens," and observing that "[o]ther courts have indicated that the term 'interest' is broad, covering more than mere liens"). Moreover, such construction

8

furthers the purpose of Section 363(f). As the Court in *In re Medical Software Solutions*, 286 B.R. 431 (Bankr. D.Utah 2002) explained:

> The authority to sell free and clear is broad because it reflects a compelling policy intended by Congress in § 363. [T]he purpose behind the free and clear language is to maximize the value of the asset, and thus enhance the payout made to creditors. Without free and clear language, prospective buyers would be unwilling to pay a fair price for the property subject to sale; instead, the price would have to be discounted, perhaps quite substantially, to account for the liabilities that the buyer would face simply as a result of acquiring the asset.

286 B.R. 446-47 (internal quotations omitted).

The Court is persuaded that the phrase "interest in property" is not limited to *in rem* interests in property, and is sufficiently broad to include Father Mundy's Partition Claim. The purpose behind the free and clear language of Section 363(f) is underscored in the case before the Court. If Mundy Ranch is not permitted to sell property free and clear of Father Mundy's Partition Claim, it would mean that any holder of stock in a New Mexico corporation that files a lawsuit seeking dissolution of the corporation and a partition of its property based on allegations of corporate waste could effectively block any sale of real property by the corporation in a subsequent chapter 11 case or cause a diminution, perhaps quite substantially, of sale prices.[6] Buyers would have to assume the risk of taking the property subject to a later partition dividing the purchased property among shareholders. This would thwart the purpose of Section 363(f) and undermine the efficacy of chapter 11 as a tool to maximize the value of assets for the benefit of creditors and other parties in interest.[7]

---

[6] Under New Mexico law, a court has the power to liquidate the assets of a corporation if a shareholder establishes that "the corporate assets are being misapplied or wasted." NMSA 1978, § 53–16–16(A)(1)(d) (1967).

[7] Maximizing the value of assets for the benefit of creditors and other parties in interest is an important purpose of chapter 11. *See, e.g., Toibb v. Radloff,* 501 U.S. 157, 163, 111 S.Ct. 2197, 2201, 115 L.Ed.2d 145 (1991) ("Chapter 11 … embodies the general Code policy of maximizing the value of the bankruptcy

9

The Partition Claim arises out of and is inextricably linked to the assets that Mundy Ranch seeks to sell. It constitutes a sufficient interest in property to be subject to 11 U.S.C. § 363(f).

> b. *Whether Mundy Ranch May Sell the Simms Parcel*
>    *Free and Clear of the Partition Claim*

Section 363(f)(4) permits a debtor to sell property free and clear of an interest in property if such "such interest is in bona fide dispute." The Court has found that the Partition Claim is an interest in the Simms Parcel, and that such interest is in bona fide dispute. The interest is in bona fide dispute because there is an "objective basis for … a … legal dispute as to the validity of [Father Mundy's] asserted interest." *In re Taylor*, 198 B.R. 142, 162 (Bankr.D.S.C.1996).[8] Accordingly, Mundy Ranch has satisfied the requirements of Section 363(f)(4) to sell the Simms Parcel free and clear of Father Mundy's interest (*i.e.,* the Partition Claim). The Court therefore concludes that Mundy Ranch will be permitted to sell the Simms Parcel to the Buyers free and clear of Father Mundy's interest (the Partition Claim) pursuant to: a) 11 U.S.C. § 363(f)(4); and b) 11 U.S.C. §§ 363(b) or/and (c), as applicable. The Court further concludes that none of the other claims asserted in the State Action will encumber or otherwise affect the Buyers' title to the Simms Parcel because such other claims do not represent an interest in the property. The

---

estate"); *In re Bonner Mall Partnership*, 2 F.3d 899, 915 (9th Cir. 1993) ("Chapter 11 has two major objectives 1) to permit successful rehabilitation of debtors…; and 2) to maximize the value of the estate") (internal citations omitted); *In re Holley Garden Apartments, Ltd.*, 238 B.R. 488, 495 (Bankr.M.D.Fla.1999) ("The fundamental principles of Chapter 11 include the desire to maximize the value of the estate for the benefit of all creditors, to promote equal distribution among creditors, and to avoid piecemeal, preferential dismemberment of a debtor's assets.").

[8] *See also In re Nicole Energy Services, Inc.,* 385 B.R. 201, 229 (Bankr.S.D.Ohio 2008) (An interest is subject to a bona fide dispute if "there is an objective basis for either a factual or legal dispute as to the validity" of the interest.); *In re Gulf States Steel, Inc.,* 285 B.R. 497, 507 (Bankr.N.D.Ala.2002) (same).

10

Court, having found that the Buyers are purchasing the Simms Parcel in good faith, also concludes that the Buyers are entitled to the protections of 11 U.S.C. § 363(m).[9]

       *c. Whether the Lis Pendens Creates an Interest in the Simms Parcel Within the Meaning of 11 U.S.C. § 363(f)*

Mundy Ranch also seeks to sell the Simms Parcel free and clear of the Lis Pendens pursuant to 11 U.S.C. § 363(f)(4). A notice of lis pendens allows a party filing a lawsuit relating to real property to notify potential purchasers and encumbrancers of the existence of the dispute. The New Mexico lis pendens statute provides, in relevant part:

> In all actions in the district court of this state ... affecting title to real estate in this state, the plaintiff, ... may record with the county clerk of each county in which the property may be situate[d] a notice of the pendency of the suit ..., and shall be constructive notice to a purchaser or encumbrancer of the property concerned; and any person whose conveyance is subsequently recorded shall be considered a subsequent purchaser or encumbrancer and shall be bound by all of the proceedings taken after the recording of the notice to the same extent as if he were made a party to the said action.

N.M.S.A.1978 § 38–1–14 (1998).

The filing of a notice of lis pendens does not, in itself, create an interest in real property. *In re Gregory Rockhouse Ranch*, 380 B.R. 258, 264 (Bankr.D.N.M.2007) (J. McFeeley). Instead, the lis pendens simply provides "constructive notice to subsequent purchasers and encumbrancers of litigation affecting the title to real property." *Id. See also High Mesa Gen. P'ship v. Patterson*, 148 N.M. 863, 866, 242 P.3d 430, 433 (Ct.App. 2010) (A "notice of lis pendens is … designed to protect unidentified prospective purchasers of property by alerting them to the existence of a lawsuit that could affect the title of the property.").

---

[9] Section 363(m) "protects the validity of certain sales by the trustee from the potential consequences of an appeal, if the order authorizing the sale is not stayed." *In re C.W. Mining Co.,* 641 F.3d 1235, 1239 (10th Cir. 2011). That section provides:
> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

11

At least one court has held that a debtor in possession cannot sell property belonging to the estate free and clear of a notice of lis pendens under 11 U.S.C. § 363(f). In *In re Adamson*, 312 B.R. 16, 19 (Bankr.D.Mass.2004), the debtor allegedly entered into a contract for the sale of the debtor's residence. *Id.* After the debtor failed to complete the sale, the buyer commenced a suit in state court for specific performance of the contract and filed a notice of lis pendens with the appropriate state agency. *Id.* Shortly thereafter, the debtor filed a voluntary bankruptcy case and attempted to sell the residence to third party buyers free and clear of the lis pendens pursuant to 11 U.S.C. § 363(f). In refusing to permit the sale free and clear of any interest, the court reasoned that "a lis pendens is a form of notice that affects the title to property but does not create an interest in property … for purposes of § 363(f)." *Id.* at 20. Section 363(f), was, therefore, inapplicable.

The Court agrees that a notice of lis pendens does not constitute an interest in property within the meaning of 11 U.S.C. § 363(f). It is a notice. The Court therefore concludes that Mundy Ranch cannot sell the Simms Parcel free and clear of the Lis Pendens. Mundy Ranch expressed concern that the Lis Pendens will cloud the title to its property, thereby discouraging potential buyers and reducing its chances of achieving a successful reorganization. This fear is unfounded in light of the Court's ruling. The Court has determined that Mundy Ranch will be able to sell the Simms Parcel free and clear of Father Mundy's Partition Claim. The Lis Pendens simply provides notice of that claim. Thus, even though the Court's ruling will not affect the existence of the Lis Pendens, the Buyers will not be bound by the claims or any other proceedings in the State Action, including the Partition Claim. The Lis Pendens will survive, but it will have no further legal effect as to the Simms Parcel upon consummation of the sale to the

12

Buyers and will not cloud the Buyers' title to the Simms Parcel. If Father Mundy were later to prevail on the Partition Claim, the Simms Parcel will not be subject to partition.[10]

### d. Whether Father Mundy is Entitled to Adequate Protection.

Having determined that Father Mundy has an interest in the Simms Parcel under 11 U.S.C. §363(f), and that Mundy Ranch may sell the Simms Parcel free and clear of that interest, the Court must decide whether and to what extent Father Mundy is entitled to adequate protection under 11 U.S.C. § § 361 and 363. Father Mundy asks the Court to sequester all or only his portion of the sale proceeds (approximately $36,281.25) pending plan confirmation as adequate protection. He seeks protection against the mismanagement and waste of corporate assets. Sales under Section 363(f) are subject to an adequate protection requirement. Collier on Bankruptcy, ¶ 363.06[6][a], at 363–51 (15th ed. Supp.2004). 11 U.S.C. § 361 sets forth three nonexclusive methods that adequate protection may be afforded to a creditor or other party in interest. "One method is by requiring the trustee to make a cash payment or periodic cash payments to the creditor to offset any decrease in the value of the creditor's interest in its collateral occasioned by the automatic stay or use, sale or lease of the collateral other than in the ordinary course of business." *In re Blehm Land & Cattle Co.,* 859 F.2d 137, 139 (10th Cir. 1988) (internal quotations omitted). Other methods include providing additional or replacement liens or granting such other relief "as will result in the realization of the indubitable equivalent of such

---

[10] The parties also disagreed as to whether the Lis Pendens is valid. Compare *U.S. v. Jarvis*, 499 F.3d 1196, 1203 (10th Cir. 2007) (noting that "to be eligible to record a lis pendens notice on a piece of real property, … the party recording the notice must assert a present claim to the property's title or have some other present interest in the subject property." ) with *High Mesa Gen. P'ship v. Patterson*, 148 N.M. 863, 866, 242 P.3d 430, 433 (Ct.App. 2010) ("Filing a notice of lis pendens … is not limited to those cases in which the adverse party claims a beneficial interest in the title to the property."). Because the Lis Pendens, if otherwise valid, will have no further legal effect as to the Simms Parcel upon consummation of the sale to the Buyer, the Court need not reach this issue.

entity's interest in property." 11 U.S.C. § 361(2)-(3). Additional adequate protection is not required if the creditor or other party in interest is already adequately protected. For example, a sufficient equity cushion can afford adequate protection for a lien.[11] In determining whether, and to what extent, to grant adequate protection in the context of a sale under 11 U.S.C. § 363(f), the Court must consider, on a case-by-case basis: (1) the nature of the claimant's interest in the property; and (2) the particular harm the interest holder is trying to avoid. *Matter of Braniff Airways, Inc.* 783 F.2d 1283 (5th Cir. 1986). *See also In re Puff*, 2010 WL 5018401 (Bankr.N.D.Iowa 2010) (a creditor must establish the nature of its interest to receive adequate protection payments).

Sequestering a portion of the net sale proceeds from the sale of the Simms Parcel for the benefit of Father Mundy is not appropriate under the circumstances of this case. If Mundy Ranch were required to sequester a portion of the sale proceeds for Father Mundy each time it sold property, it would undermine important policies of the Bankruptcy Code. Equality of distribution among creditors and equity security holders with the same priority is required. As the United State Supreme Court recently pointed out, "giv[ing] priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667, 126 S.Ct. 2105, 2116, 165 L.Ed.2d 110 (2006). The same principle applies to shareholders, and sequestering Father Mundy's portion of the sale proceeds would effectively give him a priority over other shareholders.

Moreover, Father Mundy does not have a present interest in the Simms Parcel. He is a stockholder in the debtor corporation. The Simms Parcel is owned by Mundy Ranch, not by the

---

[11] *E.g. In re Price*, 370 F.3d 362, 377 (3rd Cir. 2004); *Matter of Mendoza*, 111 F.3d 1264, 1272 (5th Cir. 1997); *Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1203 (1st Cir. 1995); *In re Polaroid Corp.*, 460 B.R. 740, 744 n.9 (8th Cir. BAP 2011).

14

individual shareholders.[12]  Instead, Father Mundy has a disputed, contingent ownership interest in real estate assets of Mundy Ranch, the extent of which depends on whether a court will grant his claim for dissolution of the corporation and partition its assets for the benefit of shareholders.

This type of interest does not warrant a grant of additional adequate protection in connection with sales free and clear of interests in this chapter 11 case.  The Bankruptcy Code provides adequate protection for shareholders against Mundy Ranch, as debtor in possession, mismanaging and wasting its assets.  For example, debtors in possession are required to file truthful, accurate reports listing monthly income and expenses.  *See* 11 U.S.C. § 521.  Debtors in possession owe fiduciary duties to the bankruptcy estate.  *CFTC v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).  They are required to: (1) make good-faith business decisions; (2) refrain from self-dealing, (3) treat all parties to the case fairly; (4) and maximize the value of the estate.  *In re Brook Valley VII, Joint Venture,*, 496 F.3d 892, 900 (8th Cir. 2007) (citing 7 Collier on Bankruptcy ¶ 1107.02[4]).  In addition, Mundy Ranch may not operate other than in the ordinary course of business without prior Court approval.  11 U.S.C. § 363(b)(1).  A court in appropriate circumstances may also appoint a Chapter 11 trustee or an examiner or convert a Chapter 11 case to a case under Chapter 7.  *See* 11 U.S.C. §§ 1104 and 1112.

Based on the foregoing, the Court concludes that Father Mundy's interest in the Simms Parcel and the proceeds thereof is adequately protected against mismanagement and waste of corporate assets by the restrictions on Mundy Ranch's operation as a Chapter 11 debtor in possession and by other protections the Bankruptcy Code affords Father Mundy.  Father Mundy is therefore not entitled to additional adequate protection.

---

[12] *See* 18A Am. Jur. 2d Corporations § 630 (2004) ("A stockholder has no right to interfere with the possessory interest of the corporation in its assets or property" because the corporation, not the shareholders, owns the property of the corporation.).

15

Case 12-13015-j11    Doc 49    Filed 12/10/12    Entered 12/10/12 13:24:14 Page 15 of 17

CONCLUSION

Based on the foregoing, the Court will grant Mundy Ranch's Motion to sell the Simms Parcel to the Buyers free and clear of Father Mundy's interest in the Simms Parcel, including the Partition Claim, pursuant to: 1) 11 U.S.C. § 363(f)(4) and 2) 11 U.S.C. §§ 363(b) or/and (c), as applicable. The Partition Claim is a sufficient interest in property to be subject to a sale free and clear of that interest under 11 U.S.C. § 363(f). The Lis Pendens does not constitute an interest in property subject to 11 U.S.C. § 363(f), but will not cloud the title to the Simms Parcel upon consummation of the sale because the Simms Parcel will be sold free and clear of the claim of which the Lis Pendens provides notice. Further, the Buyers will be afforded the protections of 11 U.S.C. § 363(m).

Mundy Ranch also seeks approval of the employment of Freedom Realty, Inc. (Michele Marino) ("Broker") as broker for the sale. Father Mundy did not object to the request. The Court will, therefore, approve Mundy Ranch's employment of Broker as requested.

The Court will enter an order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:

COPY TO:

Daniel J. Behles
Moore, Berkson & Gandarilla, P.C.
P.O. Box 7459
Albuquerque, NM 87194

Christopher M. Gatton
Law Office of George Dave Giddens, PC

10400 Academy Rd., # 350
Albuquerque, NM 87111

George D. Giddens, Jr.
10400 Academy Rd NE, Ste 350
Albuquerque, NM 87111-1229